UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ALAN RADIN,

          **Plaintiff,**

   - against -

CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, QUEENS COUNTY
DISTRICT ATTORNEY'S OFICE, IVY DROR,
& POLICE OFFICER JOHN DOE,

          **Defendants.**
------------------------------------------------------------x

**OPINION & ORDER**

14-cv-7347 (NG) (RLM)

**GERSHON, United States District Judge:**

Plaintiff Alan Radin brings this action pursuant to 42 U.S.C. § 1983 alleging claims for false arrest and municipal liability, as well as multiple state-law claims. Plaintiff names the following as defendants: the City of New York (the "City"); the New York City Police Department ("NYPD"); the Queens County District Attorney's Office ("DA's Office"); and Detective Ivy Dror ("Dror"). The Complaint arises from plaintiff's September 18, 2013 arrest for alleged sexual assaults against two women. The charges resulting from this arrest were ultimately dismissed on October 9, 2014. Defendants have moved to dismiss the Complaint for failure to state a claim. For the reasons set forth below, defendants' motion is granted.

**I.    The Complaint**

The facts are taken from the Complaint ("Compl."); they are assumed to be true for purposes of this motion.

On April 12, 2013, Sophia Terzulli ("Terzulli") was attacked by an unknown assailant. On September 13, 2013, Aziza Shuler ("Shuler") was similarly attacked. On both occasions, the perpetrator approached the women from behind, squeezed their buttocks without consent, and then

fled the scene. The media widely reported these incidents, and it was believed that they were connected to a string of similar attacks. On September 18, 2013, plaintiff was arrested for the alleged assaults. He was arraigned on September 20 and charged with two counts of Forcible Touching in violation of N.Y. Penal Law § 130.52 and two counts of Harassment in the Second Degree in violation of N.Y. Penal Law § 240.26. Plaintiff spent five days in jail before posting bail.

At his arraignment, the DA informed plaintiff that three identification procedures had been conducted in the case.[1] Shuler had picked plaintiff out of a photo array and, subsequently, a lineup, and Terzulli picked plaintiff out of a lineup. According to plaintiff, the DA failed to inform him at the arraignment of two facts that he argues call into question the validity of his arrest based on these identifications. First, two other victims viewed him in a lineup but were unable to identify him. Second, Terzulli was able to identify him only with a 75% degree of certainty. Plaintiff alleges he did not learn of these two facts until four months after his arraignment. The DA ultimately dismissed the charges on October 9, 2014 because one of the victims became uncooperative, though it is unclear whether it was Shuler or Terzulli who ceased cooperating.

---

[1] In support of their motion, defendants attach the "Identification Notice" which reflects the Shuler and Terzulli identifications. *See* Declaration of Qiana Smith-Williams in Support of Defendants' Motion to Dismiss ("Smith-Williams Declaration") (Dkt. No. 22). I need not consider whether this document is appropriate to evaluate in conjunction with a motion to dismiss because the Complaint pleads all of the information contained in the Identification Notice. In his opposition, plaintiff also submits a declaration to which he attaches three exhibits: (1) a certificate of disposition demonstrating the charges against plaintiff were dismissed; (2) four newspaper articles relating to the incidents; and (3) Terzulli's April 21, 2013 complaint to the NYPD. *See* Declaration of Lonnie Hart Jr. in Opposition to Defendants' Motion to Dismiss ("Hart Declaration") (Dkt. No. 24). In deciding this motion, I need not rely on any of the exhibits attached to the Hart Declaration.

Plaintiff claims that, because of his arrest, he was publicly humiliated by the amount of media attention the story received. Additionally, he was evicted from his apartment, his vehicle was repossessed, he was fired from his job as a salesperson at a music store—a job he had for over a decade—and he was unable to secure bookings as a disc jockey, which was his second career.

## II. Standard of Review

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true all well-pleaded factual allegations and must draw all inferences in plaintiff's favor. *Swiatkowski v. Citibank*, 446 Fed. Appx. 360, 360-61 (2d Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. Plaintiff's Claims

Initially, plaintiff alleged claims pursuant to 42 U.S.C. § 1983 for: (1) denial of due process and a fair trial; (2) malicious prosecution; and (3) false arrest. On October 26, 2015, plaintiff voluntarily dismissed the first two claims, thus leaving only the false arrest claim. *See* Dkt. No. 20. He also brings a municipal liability claim against the City under *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978). Lastly, plaintiff asserts state law claims for intentional and negligent infliction of emotional distress, and violations of the New York State Constitution Article I, Sections 6 and 12.

### a. False Arrest

To succeed on a § 1983 claim, plaintiff must demonstrate that defendants, acting

3

under color of state law, deprived him of a constitutional right. Here, plaintiff alleges false arrest in violation of the Fourth Amendment. To prevail on this claim, plaintiff must demonstrate that: (1) defendants intended to confine him; (2) plaintiff was conscious of the confinement; (3) plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Faltine v. Murphy*, No. 15-cv-3961, 2016 WL 3162058, at *4 (E.D.N.Y. June 3, 2016). "To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either (1) he had probable cause for the arrest, or (2) he is protected from liability because he had qualified immunity." *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015).

When evaluating whether probable cause existed to support an arrest, courts must consider "those facts available to the officer at the time of the arrest and immediately before it" and be mindful that "probable cause does not require absolute certainty." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotations omitted). The analysis requires courts to examine the "totality of the circumstance" and to "be aware that probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts." *Id.* (internal quotation omitted). Probable cause is deemed to exist "when an officer has 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (internal quotation omitted).

Incriminating information from a victim or eyewitness is generally sufficient to establish probable cause, especially when there are no facts that call the information's veracity into doubt. *See Dufort v. City of New York*, No. 12-cv-2283, 2016 WL 1717110, at *4 (E.D.N.Y. Apr. 28, 2016); *see also Slater v. Mackey*, No. 12-cv-4325, 2015 WL 6971793, at *7 (E.D.N.Y. Nov. 10, 2015). Such incriminating information includes identifying a suspect from a photo array or lineup.

*See, e.g., Virgil v. Town of Gates*, 455 Fed. Appx. 36, 38 (2d Cir. 2012) ("A victim's identification of an assailant is, by itself, sufficient probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity.") (internal quotation omitted); *Alvarado v. City of New York*, 453 Fed. Appx. 56, 58 (2d Cir. 2011) (determining that victim's identification of plaintiff from lineup and photo array established probable cause).

Here, two victims identified plaintiff from either a photo array or lineup. Therefore, unless there were "circumstances that raise doubts as to the victim's veracity," these identifications constitute probable cause.[2] *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995). Plaintiff argues that such circumstances existed here in that two other victims were unable to identify him in a lineup, and Terzulli identified him with only 75% certainty.

However, courts have consistently held that conflicting evidence does not negate probable cause. *See Wieder v. City of New York*, 569 Fed. Appx. 28, 29 (2d Cir. 2014) ("Though there were conflicting accounts of the physical altercation, 'we have found probable cause where a police officer was presented with different stories from an alleged victim and the arrestee.'") (quoting *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001)); *see also Gaston v. City of New York*, 851 F. Supp. 2d 780, 791 (S.D.N.Y. 2012) (probable cause existed when victim identified assailant notwithstanding assailant having an alibi). This principle applies equally to conflicting

---

[2] Plaintiff relies on *Bullard v. City of New York*, 240 F. Supp. 2d 292, 298-99 (S.D.N.Y. 2003), to support his argument that there were circumstances present in this case that should have led defendants to doubt the victims' veracity. However, the facts of that case differ significantly from those present here. In *Bullard*, plaintiff was arrested on multiple occasions based on the statements of people who had the markings of unreliability. For example, one alleged victim fraudulently represented himself to the arresting officers as a psychiatrist and employee of the United States Marshal Service—neither of which was true. Another alleged victim received an "amorous kiss" from an interested party after plaintiff's arrest—seemingly as a reward for the arrest. No such facts exist in this case to cast doubt on the identifications made by Shuler and Terzulli.

5

identification evidence. In *Lee v. Corneil*, No. 13-cv-8359, 2016 WL 1322444, at *3-4 (S.D.N.Y. Apr. 1, 2016), the arresting officer viewed a surveillance tape that showed the plaintiff (who brought a false arrest claim) pickpocketing a victim. The tape was sufficiently clear to allow the officer to identify the plaintiff, which the court deemed to constitute probable cause despite the victim's inability to identify plaintiff in a lineup. *See also Dufort*, 2016 WL 1717110, at *2 (concluding that probable cause existed despite only one of six witnesses positively identifying plaintiff from a lineup). Similarly, in this case, that some victims did not identify plaintiff does not vitiate the probable cause that resulted from the identifications by Shuler and Terzulli.[3]

In an attempt to undermine probable cause, plaintiff heavily relies on Terzulli's inability to identify him with complete certainty, but only with 75% certainty. As an initial matter, a victim need not be completely confident in her identification to give rise to probable cause. *See Keith v. City of New York*, ---Fed. Appx.---, 2016 WL 860376, at *2 (2d Cir. 2016) ("What is more, we are unaware of any pertinent case in which a court has suggested that, in order for a witness's identification of a perpetrator to provide probable cause, it must be made with complete certainty. Indeed, courts have explicitly held that it need not be.").[4]

---

[3] The Court notes that plaintiff was charged only with two counts of Forcible Touching and Harassment in the Second Degree. Therefore, the charging is consistent with two victims identifying plaintiff and two victims failing to do so. Plaintiff wants the court to offset the positive identifications with the negative ones. However, each of these instances was a distinct crime with a different victim.

[4] In his opposition, plaintiff cites *Holmes v. Artus*, No. 03-cv-7065, 2005 WL 1027195, at *22 (S.D.N.Y. May 4, 2005), adopted by 2008 WL 512786 (S.D.N.Y. Feb. 26, 2008), for the proposition that identifications made with less than certainty cannot give rise to probable cause. In this *habeas corpus* case, the *Holmes* court had to decide whether a lineup was unduly suggestive because petitioner was the only person in the lineup who matched the description given by multiple witnesses, such that he "stood out." The court did not address whether identifications with less than complete certainty are sufficient to establish probable cause to arrest or can serve as a basis for prosecution. Moreover, even if one were to read *Holmes* to suggest that less than certain identifications are not properly admitted at trial, a probable cause determination can be based on

Moreover, even if Terzulli had been entirely unable to identify plaintiff, there would nonetheless be Shuler's identification. As plaintiff concedes, "defendants more than likely had probable cause to arrest the [plaintiff] related to [the] complaint and subsequent identification of Aziza Shuler." *See* Pl. Opp. at 5. Therefore, plaintiff admits that probable cause existed to arrest him as to the Shuler attack. "Case law is clear that 'a plaintiff does not have a claim for false arrest . . . if, at the time of his arrest . . . he already is in custody on other charges, because there is no deprivation of liberty interests.'" *Arnold v. Geary*, No. 09-cv-7299, 2013 WL 4269388, at *4 (S.D.N.Y. Aug. 16, 2013) (quoting *Doe v. Selsky*, 841 F. Supp. 2d 730, 732 (W.D.N.Y. 2012)); *see also Walker v. Sankhi*, 494 Fed. Appx. 140, 142-43 (2d Cir. 2012) ("[E]ven if he could overcome the presumption of probable cause, [plaintiff] could not have suffered a deprivation of liberty as a result of the Bellamy burglary charge because, throughout the pendency of that charge, he was already in custody, and remained in custody, for a completely separate burglary charge . . . ."). In the instant case, the police arrested plaintiff on September 18, 2013, and he was released on bail five days later. Plaintiff does not plead that, had he been arrested solely for the alleged attack on Shuler, he would have been in jail for less than five days. Therefore, even if there were not probable cause for his arrest relating to the Terzulli attack (which there was), plaintiff did not suffer any further deprivation of liberty because he would nonetheless have been incarcerated based on the admittedly valid Shuler arrest.

In sum, in light of the positive identification by Shuler and the identification by Terzulli at a 75% level of certainty, there was probable cause for plaintiff's arrest as to both attacks. And, even if there were not probable cause for the Terzulli-related arrest, that arrest could not give rise

---

evidence that would "not be admissible at trial." *Stansbury v. Wertman*, 721 F.3d 84, 91 (2d Cir. 2013).

to a false arrest claim because it did not result in a deprivation of plaintiff's liberty beyond what would have occurred had he been arrested only for the Shuler attack.

Therefore, the defendants' motion to dismiss the false arrest claim is granted.[5]

b.     *Monell* Claim

To establish a *Monell* claim, plaintiff must demonstrate: "(1) an official policy or custom that (2) caused him to be subjected to (3) a denial of a constitutional right." *Fenner v. City of New York*, 392 Fed. Appx. 892, 894 (2d Cir. 2010) (internal quotation omitted). To support such a claim, "the mere assertion of the existence of policy is not enough." *Scalpi v. Town of East Fishkill*, No. 14-cv-2126, 2016 WL 858916, at *6 (S.D.N.Y. Feb. 29, 2016). Instead, there have to be sufficient factual details that meet *Iqbal* and *Twombly's* plausibility standard, rather than boilerplate allegations of unconstitutional policies or practices. *See Plair v. City of New York*, 789 F. Supp. 2d 459, 468-69 (S.D.N.Y. 2011).

However, as a threshold matter, there can be no *Monell* liability without an underlying constitutional violation. *See e.g.*, *Fappiano v. City of New York*, ---Fed. Appx.--- 2016 WL 860255, at *5 (2d Cir. 2016) ("[Plaintiff's] failure to establish his claim against [defendant] forecloses his claim against the City of New York because in the absence of an underlying constitutional violation by a city employee there is no municipal liability under *Monell*."); *Howard v. City of New York*, 602 Fed. Appx. 545, 549-50 (2d Cir. 2015) (same). I have already concluded that plaintiff was not falsely arrested. Therefore, because there is no underlying constitutional

---

[5]     Because I conclude there was probable cause for the arrest, I will not address whether Dror is entitled to qualified immunity.

violation, there can be no *Monell* liability.[6] Accordingly, I grant defendants' motion to dismiss the *Monell* claim on this basis and need not address the sufficiency of plaintiff's pleadings.[7]

c. **State Law Claims**

Plaintiff also alleges violations of the New York State Constitution Article I, Sections 6 and 12, and state law claims for intentional and negligent infliction of emotional distress. Because I grant defendants' motion as to plaintiff's federal claims, no claims remain over which this court has original jurisdiction. I therefore decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3).

IV. **Conclusion**

Accordingly, for the reasons set forth herein, defendants' motion to dismiss is GRANTED in its entirety. Plaintiff's false arrest claim under § 1983 and his *Monell* claim are hereby dismissed. As to plaintiff's claims under New York State law, they are dismissed without prejudice. The Clerk of Court is directed to enter judgment for defendants and to close the case.

**SO ORDERED.**

/s/ *Nina Gershon*
**NINA GERSHON**
**United States District Judge**

Dated: July 21, 2016
Brooklyn, New York

---

[6] Though the claims are being dismissed in their entirety on the merits, any claims against the NYPD or DA's Office would nonetheless be dismissed because they are not suable entities. *See, e.g., Rogers v. New York City Police Dept.*, No. 12-cv-3042, 2012 WL 4863161, at *2 (E.D.N.Y. Oct. 12, 2012).

[7] Plaintiff has voluntarily dismissed his first two claims (denial of due process and a fair trial and malicious prosecution), and the *Monell* arguments in plaintiff's motion papers are confined to defendants' failure to train police officers to understand the meaning of probable cause and the threshold that must be satisfied prior to effectuating an arrest. *See* Pl. Opp. at 11-12.